UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL ALAN CROOKER,              )
    Plaintiff,                     )
                             )
              v.                 )
                             )   CIVIL ACTION NO. 08-10149-PBS
                             )
UNITED STATES OF AMERICA,          )
ET AL.,                            )
    Defendants.                    )

**MEMORANDUM AND ORDER**
September 29, 2010

SARIS, U.S.D.J.

**I.   INTRODUCTION**

**A.   The State Complaint**

    Plaintiff Michael Alan Crooker ("Crooker"), currently a
prisoner at the Federal Correctional Institution in Adelanto,
California, initially filed suit in the Suffolk County Superior
Court in the Commonwealth of Massachusetts, against Ariane D.
Vuono ("Vuono"), a former Assistant United States Attorney and
currently a state court judge.  Crooker's claims pertained to
Vuono's actions in prosecuting a criminal case against him.  See
United States v. Crooker, CR 04-30034-MAP.  Specifically, Crooker
challenges Vuono's solicitation and use of his prison mail in
connection with his criminal prosecution while he was
incarcerated at Wyatt Correctional Facility ("Wyatt") in Rhode
Island.  In the state Complaint, Crooker asserted claims under
the Massachusetts Civil Rights Act, negligence claims under the

Federal Tort Claims Act ("FTCA"), and constitutional torts under

<u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>,

403 U.S. 388 (1971)("<u>Bivens</u>") with respect to each mail

interception.

**B.   The Instant Action**

The litigation history of the instant action is tortured,

but a recitation of the course of the proceedings is necessary to

set the context for evaluating the various legal issues

presented.  The salient proceedings in this action are summarized

as follows:  On January 31, 2008, Crooker's state case was

removed to federal court by the United States.  Notice of Removal

(Docket No. 1).  The Notice of Removal stated, in relevant part:

> The Defendants, United States of America <u>and Ariane D. Vuono, by her attorney</u>, hereby give notice pursuant to 28 U.S.C. § 1446(a) of their removal of this lawsuit to the United States District Court for the District of Massachusetts....

Notice of Removal (Docket No. 1 at 1)(emphasis added).  The

Notice of Removal was signed by Assistant United States Attorney

Rayford A. Farquhar and stated above the signature line: "United

States of America and Ariane D. Vuono, By <u>their</u> attorneys."  <u>Id.</u>

(emphasis added).

Contemporaneous to the Notice of Removal, the United States

filed a Notice of Substitution pursuant to 28 U.S.C.

§§ 2679(d)(1) and (2) and certified that Vuono's actions were

within the scope of her employment and duties as an employee of the United States.  Notice (Docket No. 2).  The Notice of Substitution limited the substitution of the United States as a defendant with respect to "any and all causes of action based on state law."  Id. (emphasis added).  The Notice of Substitution was silent as to the FTCA claims and the Bivens claims.

On November 7, 2008, the United States filed a Motion to Dismiss, along with a Memorandum in Support (Docket Nos. 8 and 9).  Defendants claim the action must be dismissed because Crooker failed to exhaust his prison remedies in accordance with 42 U.S.C. § 1997e, and that Crooker failed to exhaust his administrative remedies under the FTCA.  Attached to the Memorandum in Support was a Declaration of Jean Singleton, Wyatt's Program Director, averring that there was no record at Wyatt of a claim filed by Crooker involving Ariane D. Vuono.

On December 18, 2008, Crooker filed an Opposition to the Defendants' Motion to Dismiss (Docket No. 12), and on December 22, 2008, without filing a motion for leave of Court (or the need to do so under Fed. R. Civ. P. 15(a)), Crooker filed an "Amended Complaint" (Docket No. 13) naming both the United States of America and Ariane D. Vuono as defendants.  The Amended Complaint asserts 33 counts under Bivens against Vuono (Counts 1-33) alleging unlawful searches and seizures by her.  For each Count,

3

Crooker identifies a separate letter he claims was wrongfully intercepted, and the dates, where known.  The Amended Complaint also asserts 33 Counts (Counts 34-66) under the FTCA against the United States, alleging negligence.  Crooker asserts that:  "The negligence arises from the claimed belief by Vuono, Winfield, and others that pretrial detainees at Wyatt who are told to seal their outgoing letters which will not be read do not have an objectively reasonable expectation of privacy in their writings deposited for mailing into locked letter boxes."  Id. at ¶ 29.[1]

---

[1] More specifically, in the Amended Complaint, Crooker alleges that Vuono misused her authority by soliciting the Wyatt staff to open and photocopy letters written and sealed by Crooker and placed into locked mail depositories.  Am. Compl. (Docket No. 13, at ¶ 2).  He claims Vuono was using these letters for the purpose of furthering her case rather than for the legitimate purposes of safety and suspicion of unrelated criminal activity.  Id. at ¶¶ 16-18.  He contends that between the dates of July 16, 2004 and May 23, 2005 at least 33 of his incoming and outgoing letters and enclosures were photocopied by Wyatt staff and disclosed to Vuono.  Additionally, Crooker claims that at least 115 of his letters have been intercepted in total.  He also asserts that Vuono issued grand jury subpoenas demanding photocopies of these letters and enclosures.  Id. at ¶ 17.  Crooker alleges that the opening and photocopying of said letters were not brought to his attention until May 9, 2006 at a suppression hearing relating to unrelated searches and seizures.  Id. at ¶ 18.  By that time, he had been transferred out of Wyatt and thus was unable to take administrative action at Wyatt.  Crooker's Bivens claim are based on the contention that he had an objectively reasonable expectation of privacy in the contents of his mail because the mail was placed in a locked letter box and, as a pretrial detainee, he had greater constitutional protections than convicted criminals.  Id. at ¶¶ 21, 24.  He asserts FTCA claims based on these same contentions.

On December 24, 2008, Crooker filed a Motion for Partial
Summary Judgment (as to certain counts/letters), a Memorandum in
Support, and a Declaration (Docket Nos. 14-17).  On January 16,
2009, an exhibit was filed by the United States in support of its
Motion to Dismiss (Docket No. 19).  This exhibit was Wyatt's
Policy Number 551 governing detainee correspondence, mail and
telephone access and use.

On January 29, 2009, Crooker filed a Notice of Filing
(Docket No. 23), which included a copy of his purported
administrative tort claim filed and received by the Federal
Bureau of Investigation, as well as the November 20, 2007 denial
of said claim by the U.S. Department of Justice.  That document
reflected that Crooker was advised that if he was dissatisfied by
the decision, he could file suit "in the appropriate <u>United
States District Court</u>" not later than six months after November
20, 2007.  <u>Id.</u> (emphasis added).  Instead of filing suit in this
Court, Crooker elected to file suit in the state court.[2]

Thereafter, on March 31, 2009, Chief Magistrate Judge Judith
G. Dein issued a Report and Recommendation and Order on Non-

---

[2]Crooker is a three-strikes litigant under 28 U.S.C. § 1915(g),
and therefore could not have proceeded with this action in
federal district court unless he paid the entire filing fee at
the time of filing suit, because he was ineligible for *in forma
pauperis* status.

Dispositive Motions (Docket No. 25).  In that document,
Magistrate Judge Dein ordered, *inter alia*, that Crooker's Amended
Complaint (Docket No. 13) was the operative pleading in this
action.  In light of this, she recommended that this Court deny
the United States's Motion to Dismiss without prejudice and deny
Crooker's Motion for Partial Summary Judgment.  Magistrate Judge
Dein also noted that although the United States substituted
itself for the state claims against Vuono, it was unclear whether
the United States had substituted, or would substitute, itself
for Vuono for purposes of defending the <u>Bivens</u> claims as well.
Report and Recommendation (Docket No. 25, at 8).

On April 16, 2009, the United States filed a Motion to
Dismiss Plaintiff's Amended Complaint (Docket No. 27), asserting
defenses in connection with the <u>Bivens</u> claims against Vuono, such
as the failure of Crooker to exhaust his administrative remedies
under the Prison Litigation Reform Act, and the lack of legal
merit as to the Fourth Amendment claims, arguing that Crooker's
Fourth Amendment rights were not violated because there was a
legitimate penological interest in seizing Crooker's mail.  The
United States also argued that, with respect to the negligence
claims, Crooker failed to set forth underlying facts in the
Amended Complaint establishing Vuono's negligence.  Rather, the
United States argued that all of Vuono's alleged conduct was

intentional.  Finally, the United States argued that the FTCA claims were barred by sovereign immunity, since the waiver of sovereign immunity under the FTCA does not encompass constitutional torts.

On April 17, 2009, Crooker filed a Proposed Concession Regarding _Bivens_ Claim (Docket No. 29) asking the government to concede and stipulate that his allegations asserted in the Amended Complaint constituted negligence in exchange for Crooker's stipulation that any _Bivens_ claims would be waived.  No response to that pleading was filed.

Thereafter, on May 6, 2009, over Crooker's objections and by Electronic Order, this Court adopted Magistrate Judge Dein's Report and Recommendation in its entirety.  The case was then referred to Chief Magistrate Judge Dein for pretrial management, and limited discovery was permitted on the issue of the availability of prison remedies.

On May 11, 2009, Crooker filed an Opposition to Defendant's Motion to Dismiss Amended Complaint (Docket No. 30), a Declaration regarding the unavailability of administrative remedies (Docket No. 31), a Motion to Permit Discovery (Docket No. 32), and a Request for Production of Documents (Docket No. 32-2).  Crooker contends that he was committed, released, and re-committed four different times to four different penal systems

7

from July 2004 through July 2007, and was unable to exhaust administrative remedies within the prison systems.  Additionally, Crooker alleged that Joseph McGuire, his Correctional Counsel at MacDougall-Walker in Connecticut, told him he would not be able to use the grievance procedure to address the mail problems at Wyatt.  Opposition (Docket No. 31 at ¶ 17).

On June 9, 2009, this Court entered an Order (Docket No. 35) denying without prejudice the United States's Motion to Dismiss the Amended Complaint (Docket No. 27), but permitting the government an opportunity to renew the motion or file a motion for summary judgment if appropriate, after the completion of discovery.  This Court directed that any new motion should address whether Vuono was properly served process while the case was pending in state court, and whether the United States had standing to assert defenses on behalf of Vuono with respect to the Bivens claim (such as the failure to exhaust administrative remedies) since no Notice of Appearance had been filed on her behalf.

On June 11, 2009, a Notice of Appearance on behalf of the United States (Docket No. 36) was filed by Assistant United States Attorney Rayford A. Farquhar, along with a Motion to Extend Time to File Summary Judgment (Docket No. 37), which was later allowed.  The Notice of Appearance did not include a

8

representation for Vuono.

On July 6, 2009, Crooker filed a Motion to Hold the Defendant in Contempt (Docket No. 38), which was opposed and later denied by Chief Magistrate Judge Dein on July 27, 2009. Further pleadings were filed thereafter, and on September 4, 2009, the United States filed a Motion to Dismiss or for Summary Judgment (Docket No. 44) and a supporting Memorandum of Law (Docket No. 45), re-asserting the prior grounds in the earlier motions, and including other defenses not previously asserted. To sum, the grounds for the Motion to Dismiss or for Summary Judgment were as follows: (1) that Crooker failed to effect proper service on Vuono as required by Fed. R. Civ. P. 4(i)(3)(pertaining to service of federal government employees being sued in their individual capacities), thereby requiring dismissal of the Amended Complaint under Fed. R. Civ. P. 4(m); (2) that Crooker failed to exhaust his administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(a), warranting dismissal of the <u>Bivens</u> claims; (3) that all of Crooker's claims were barred by prosecutorial immunity; (4) that the merits of the claims demonstrate that Crooker's Fourth Amendment rights were not violated; (5) that Crooker's claims were barred by the doctrine of claim preclusion because District Judge Michael Ponsor had held an evidentiary hearing in Crooker's

criminal trial on his Motion to Suppress and found that his Fourth Amendment rights were not violated;[3] (6) that Crooker failed to allege sufficient facts to state a negligence claim under the FTCA; and (7) that Crooker's constitutional tort claims were barred by sovereign immunity.

Although its argument is not fully developed, the United States also asserts that whether or not it represents Vuono, it is entitled to assert defenses on her behalf (including the prosecutorial immunity and claim preclusion defenses) under 28 U.S.C. § 517, without filing a Notice of Appearance on her behalf.  Crooker filed an Opposition on September 16, 2009 (Docket No. 46), asserting, among other things, that the United States submitted a Wyatt policy that was not in effect during the period in which Crooker was in custody at that facility; that he had not had access to that policy; that he properly served Vuono in accordance with Massachusetts service of process rules while the matter was pending in state court; and that the United States "is defying the court by failing and refusing to file an Appearance on behalf of Vuono, yet vigorously defending the case on her behalf."  Id. at 5.

Crooker also contends that Vuono is not entitled to absolute

---

[3]See United States v. Crooker, CR 04-30034-MAP (Memorandum and Orders, Docket Nos. 86 and 151).

prosecutorial immunity for her deliberate act in "soliciting and instigating illegal mail break-ins." Id. at 6.  Finally, Crooker concedes that the letters were the subject of a suppression hearing in the criminal case before Judge Ponsor, but asserts that the suppression issue did not involve civil liability, that (at that time) the case was pending appeal, and that the government "has confessed error in that the District Court's suppression decision was 'misplaced' and they are now urging affirmance on an alternate theory [on appeal]." Id. at 7.[4]

While the summary judgment motion was under advisement by this Court, Crooker filed, on November 2, 2009, a Motion for Leave to File a Second Amended Complaint (Docket No. 50), seeking to correct clerical errors, to include information from pretrial discovery received by him, to clarify the negligence allegation, to rectify a claimed deficiency as to sovereign immunity by alleging a state-law tort of invasion of privacy, and to allege exhaustion of available administrative remedies on May 9, 2006. On November 13, 2009, the United States filed an Opposition to

---

[4]On June 18, 2010, the United States Court of Appeals for the First Circuit ("First Circuit") reversed the District Court and remanded Crooker's criminal case for the entry of a Judgment of Acquittal, based on the holding that the silencer did not qualify as a "firearm" within the meaning of the statutory definition of 18 U.S.C. §§ 921(a)(3)(c) and 924.  See United States v. Crooker, 608 F.3d 94 (1st Cir. 2010).

Crooker's Motion (Docket No. 51) on the grounds that Crooker already amended his Complaint once and that a motion to dismiss the Amended Complaint had been filed, as well as on the ground that limited discovery was allowed by the Court in July 2009, and yet Crooker waited over three months to file his Motion for Leave to File a Second Amended Complaint.

On November 23, 2009, Crooker filed a Motion for Leave to File Reply Memorandum and Reply Memorandum (Docket No. 52). Crooker argues that leave to amend a complaint should be freely given.  He also argues that the delay in filing was not unreasonable and that it does not result in undue prejudice.

On March 1, 2010, Crooker filed, without leave of Court, a Supplemental Memorandum of Law Related to New Caselaw on Exhaustion of Administrative Remedies (Docket No. 53).  Crooker cites to a purported analogous case, <u>Key v. Toussaint</u>, 660 F. Supp. 2d 518, 525 (S.D.N.Y. 2009), for the proposition that nothing the defendants have suggested indicates that Wyatt's grievance procedure was available to inmates in the Connecticut Department of Corrections or that its grievance procedure could accommodate a prior dispute from another state's facility.

On June 28, 2010, Crooker filed a Notice of Reversal (Docket No. 54) notifying this Court that the First Circuit reversed his related conviction and ordered entry of a Judgment of Acquittal.

Crooker asserts the Fourth Amendment issues were never reached by the First Circuit and the case is now ripe for ruling on the pending motions.  The pending motions include: (1) the United States's Motion to Dismiss or for Summary Judgment (Docket No. 44); (2) Crooker' Motion for Leave to File Second Amended Complaint (Docket No. 50); and (3) Crooker's Motion for Leave to File a Reply (Docket No. 52).

## II.  DISCUSSION

### A.  Standard of Review

The standard of review of a summary judgment motion is well established.  "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Barbour v. Dynamics Research Corp., 63 F.3d 32, 36-37 (1st Cir. 1995)(quoting Rule 56, Fed. R. Civ. P.).  "The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997)(citation, internal brackets and internal quotation marks omitted).  "After such a showing, the burden

shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." Hinchey v. NYNEX Corp., 144 F.3d 134, 140 (1st Cir. 1998)(citation and internal quotation marks omitted).  The nonmoving party who bears the ultimate burden of proof may not rest on allegations in his briefs, Borchow Hosp. & Medical Supplies, Inc. v. Cesar Castillo, Inc., 96 F.3d 10, 14 (1st Cir. 1996), "but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995).

In considering a motion for summary judgment, the Court must view the entire record in the light most favorable to the opposing party and indulge all reasonable inferences in that party's favor.  O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  If, after viewing the record in the opposing party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.  These standards for summary judgment apply even where the plaintiff proceeds *pro se,* as here.  See Posadas de P.R., Inc. v. Radin, 856 F.2d 399, 401 (1st Cir. 1988).

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for

failure to state a claim upon which relief can be granted is
evaluated by "taking as true the well-pleaded facts contained in
the complaint and drawing all reasonable inferences therefrom in
the plaintiff's favor." Phoung Luc v. Wyndham Mgmt. Corp., 496
F.3d 85, 88 (1st Cir. 2007)(quoting Garrett v. Tandy Corp., 295
F.3d 94, 97 (1st Cir. 2002)).[5]  Nevertheless, the Court is not
required to adopt purely legal conclusions asserted by the moving
party. Id.  Legal assertions couched as factual allegations are
not entitled to this presumption of truth. Id.  See Chiang v.
Skeirik, 582 F.3d 238, 244 (1st Cir. 2009) ("'Threadbare recitals
of the elements of a cause of action, supported by mere
conclusory statements, do not suffice.' [citing Maldonado v.
Fontanes], 568 F.3d 263, 268 (1st Cir. 2009) (quoting Ashcroft v.
Iqbal, 129 S. Ct. 1937, 1949 (2009)).").

---

[5]The United States Supreme Court addressed the pleading standard
noting that a plaintiff's claims must be more than simply
conceivable -- they must be plausible. Bell Atlantic Corp. v.
Twombly, 550 U.S. 544, 559 (2007); Rodriguez-Ortiz v. Margo
Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007)(the Twombly
standard requires that a complaint "allege a plausible
entitlement to relief"). A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for
the misconduct alleged. Twombly, 550 U.S. at 556. See Ashcroft
v. Iqbal, 129 S.Ct. 1937, 1949 (2009)(detailed factual
allegations are not required under Rule 8, but a complaint
"demands more than an unadorned, the defendant-unlawfully-harmed-
me accusation" quoting Twombly, 550 U.S. at 555).

**B.** **Statement of Material Facts**

For purposes of summary judgment evaluation, the Court finds that there is no serious dispute among the parties that Vuono did, in fact, solicit and obtain letters from Wyatt referenced in Crooker's Amended Complaint, and that these letters were obtained pursuant to a grand jury subpoena in connection with Crooker's criminal case.  What is in dispute, however, is the reason and motivation for such actions, and whether, as a matter of law, such actions provide a basis for monetary relief for Crooker under <u>Bivens</u> and/or the FTCA.

**C.** **Threshold Matters**

1. <u>Scope of Substitution of the United States</u>;
   <u>Claims Withdrawn and Claims Remaining</u>

Crooker has not challenged the United States's certification that Vuono's actions were within the scope of her prosecutorial functions.  In fact, his Amended Complaint states that "[t]his lawsuit only pertains to her functions as a prosecutor."  Am. Complaint (Docket No. 13 at ¶ 5).  Therefore, following certification, (and, in any event, after the Amended Complaint was filed), the negligence claims asserted in the state Complaint against Vuono are no longer viable.  <u>See</u> <u>Davric Maine Corp. v. U.S. Postal Service</u>, 238 F.3d 58, 65 (1st Cir. 2001)("Once such a certification is made, the court dismisses the federal employee from the case, and substitutes the United States as defendant.");

16

See Arriaga v. United States, 2008 WL 5423869, at *1 (S.D. Cal. 2008).

While in certain circumstances the United States becomes the sole defendant in a removed action, that is not the case here.  Under 28 U.S.C. § 2679(d)(1), the United States could not substitute itself for Vuono with respect to the Bivens claims.[6]

Further, the United States clearly substituted itself for Vuono with respect to any state claim, such as one raised under the Massachusetts Civil Rights Act.  See Notice of Substitution (Docket No. 2).  However, Crooker's state claims are deemed to have been withdrawn because he filed an Amended Complaint that did not include these state claims, and, as noted above, the

---

[6]Section 2679 of Title 28, the Federal Employees Liability Reform and Tort Compensation Act of 1988 (commonly known as "The Westfall Act," Pub.L. 100-694, 102 Stat. 4563) gives federal employees absolute immunity from common law tort claims arising out of acts they undertake in the course of their official duties.  It amended key provisions of the FTCA as applied to actions against federal employees, and provided for the United States's preservation of certain defenses belonging to federal employees, such as prosecutorial immunity.  The Westfall Act expressly provides for the absolute immunity of government employees for acts committed within the scope of their employment that amounted to common law torts.  Section 2679(b)(1) provides that the FTCA's remedy against the United States for the negligent or wrongful acts or omissions of any government employee while acting within the scope of his office or employment "is exclusive of any other civil action or proceeding for money damages ... against the employee whose act or omission gave rise to the claim ...." 28 U.S.C. § 2679(b)(1).  Section 2679(c) of Title 28 directs the Attorney General to "defend any civil action or proceeding brought in any court against an employee of the Government... for any such damage or injury."  28 U.S.C. § 2679(c).

Amended Complaint is the operative pleading in this action.

Report and Recommendation (Docket No. 25 at 7).[7]  Thus, to be

clear, although Crooker has sought to include state law claims in

his proposed Second Amended Complaint, leave to file has not been

granted, and this case, as it stands now, involves only <u>Bivens</u>

claims against Vuono, and FTCA claims against the United States.

    2.   <u>Issue of Legal Representation of Vuono</u>

    A threshold issue is whether, and to what extent, the United

States Attorney legally represents Vuono with respect to the

<u>Bivens</u> claims.[8]  The representation issue is germane for two

reasons, as it implicates: (1) whether proper service on Vuono

was effected; and (2) whether the United States may assert

affirmative defenses on Vuono's behalf.

    In the Notice of Removal, counsel for the United States

expressly indicated that he was representing Vuono.

Specifically, the Notice of Removal states that it was filed on

behalf of the United States <u>and</u> Vuono by <u>their</u> attorneys.  In the

prior dispositive motions, the United States asserted affirmative

defenses and arguments on Vuono's behalf.

    This Court's Order of June 6, 2009 (Docket No. 35) required

---

[7]The parties have not raised any arguments regarding this state
claim.

[8]While the United States substituted itself on the FTCA claims
(and thus takes on any liability under the FTCA), it has not
substituted itself as to the <u>Bivens</u> claims against Vuono (and
thus has not assumed any liability under <u>Bivens</u>).

the United States to address in any renewed dispositive motion whether it has *standing* to assert a defense on Vuono's behalf. In its Memorandum in Support of its Motion to Dismiss or Summary Judgment (Docket No. 45), the United States asserts that, under 28 U.S.C. § 517, it has standing to file pleadings on her behalf, without a Notice of Appearance, in matters where it is in the United States's interest to do so, pursuant to 28 U.S.C. § 517.[9]

Section 517 "plainly confers upon the Attorney General broad discretion in his decision to dispatch government lawyers 'to attend to any ... interest of the United States.'" Hall v. Clinton, 285 F.3d 74, 80 (D.C. Cir. 2002)(quoting 28 U.S.C. § 517). This provision has been interpreted by courts to permit representation of government employees, see O'Connor v. Reed, 1993 WL 321374, at *2 n.1 (9th Cir. 1993)(unpublished decision noting that where an action is commenced by a private citizen against officers of the United States for acts performed in their official capacities, the Attorney General's representation was appropriate); Meiners v. Moriarity, 563 F.2d 343, 350 (7th Cir. 1977). It also includes the authority to represent private individuals, Hall, F.3d at 80, as long as a sufficient

---

[9]28 U.S.C. § 517 provides: "The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." Id.

governmental interest is at stake.  In other words, the broad
discretion of the Attorney General to use government lawyers
applies to "any" interest of the United States.  <u>Id.</u>

While the government has danced around the issue by failing
to file a Notice of Appearance for Vuono, the Court concludes
that it is representing Vuono in this litigation under section
517 and orders it to file a Notice of Appearance.

3.  <u>Service of Process Issue</u>

The government argues that service of process is improper
because it does not represent Vuono, who was never personally
served with a copy of Crooker's Amended Complaint.  However, the
United States was properly served with a copy of the Amended
Complaint.[10]

Because the United States Attorney's Office is deemed to
represent Vuono, its argument that the case must be dismissed for
insufficient service of process is without merit, as service of
the Amended Complaint upon Vuono's counsel is deemed to be
sufficient.  <u>See</u> Fed. R. Civ. P. 5(b)(1) (Serving an Attorney.
"If a party is represented by an attorney, service under this
rule must be made on the attorney unless the court orders service
on the party.").

---

[10]Crooker's Amended Complaint contains the required Certificate of
Service.  The United States appears to allege that it was also
not properly served, but has not expressly interposed lack of
service as a basis for its dismissal.

Further, Crooker would be unfairly prejudiced if the United States were allowed to assert its representation of Vuono in its Notice of Removal and its assertion of affirmative defenses only to retract representation so that it could later assert an argument (apparently on Vuono's behalf but without representing her) that Crooker failed to serve Vouno in accordance with Fed. R. Civ. P. 4.

D.   **The FTCA Claims Against the United States**[11]

Crooker asserts that the United States is negligent for asserting that he did not have "an objectively reasonable expectation of privacy" in prison.  Am. Compl. (Docket No. 13 at ¶ 29).  He also alleges that Vuono was negligent "in failing to be aware of legal precedent that supposedly establishes her actions were illegal."  Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment (Docket No. 15 at 5).

The Supreme Court has held that "...Congress views FTCA and <u>Bivens</u> as parallel, complementary causes of action."  <u>Carlson v. Green</u>, 446 U.S. 14, 20-21 (1980).  This has been interpreted to

---

[11]In its prior motion to dismiss, the United States asserted that Crooker failed to administratively exhaust under the FTCA and thus the Court lacked subject matter jurisdiction over the FTCA claims.  <u>Acosta v. United States Marshals Serv.</u>, 445 F.3d 509, 514 (1st Cir. 2006) (FTCA requirement of filing of administrative claim is jurisdictional).  Crooker, however, subsequently provided evidence that he had contacted the FBI regarding this issue, that the FBI conceded it was the proper agency with which to file the claim, and that his claim was denied.  The United States has not challenged Crooker's administrative presentment.

mean that <u>Bivens</u> is the method by which constitutional tort claims are brought, while claims for negligence and certain intentional (but not constitutional) torts are brought under the FTCA. <u>Washington v. Drug Enforcement Admin.</u>, 183 F.3d 868, 873-74 (8th Cir. 1999). "[V]ictims of purposeful wrongdoing on the part of federal law enforcement officers can bring specified intentional tort claims under the FTCA and constitutional tort claims under <u>Bivens v. Six Unknown Agents</u> ...." <u>Id.</u> at 873 (citations omitted). If a government agent intentionally commits an act which violates an objectively reasonable interpretation of the constitution, he is liable under <u>Bivens</u>; however, a claimant such as Crooker is not permitted to bring a <u>constitutional</u> tort cause of action under the FTCA.

Therefore, any negligence or constitutional tort claims set forth in Crooker's Amended Complaint against the United States must be dismissed, or alternatively, summary judgment must be granted for the United States on all FTCA claims.

**E.   Bivens Claims Against Vuono**

1.   Exhaustion of Administrative Remedies

The government contends that Crooker failed to exhaust administrative remedies. However, there is a disputed issue of fact whether exhaustion was available because he was transferred out of Wyatt before he learned his mail had been opened, and he was told that he could not contest out-of-state issues in the

22

California prison.   In light of this, the Court rejects the government's defense.[12]

2.   <u>Legal Standard For Absolute Immunity</u>

Next, the United States argues Crooker has failed to state <u>Bivens</u> claims upon which relief may be granted against Vuono because the doctrine of absolute prosecutorial immunity acts as a bar to his claims for monetary damages.

In <u>Bivens</u> actions and those taken under 42 U.S.C. § 1983,[13] "[m]ost public officials are entitled only to qualified immunity."   <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 268 (1993). Prosecutors, however, are entitled to absolute immunity when they engage in activities that are "intimately associated with the judicial phase of the criminal process."   <u>Imbler v. Pachtman</u>, 424 U.S. 409, 430 (1976); <u>Reid v. State of New Hampshire</u>, 56 F.3d 332, 337 (1st Cir. 1995).   Conduct falling within this category is not limited to conduct occurring in the courtroom.   It

---

[12]Moreover, this is a claim about misconduct by a prosecutor in a criminal investigation, not a challenge to prison conditions.   As such, it is doubtful exhaustion is required.   <u>See</u> 42 U.S.C. § 1997e ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").

[13]The law of immunity in a <u>Bivens</u> claim against a federal official parallels that in a § 1983 claim against a state official.   <u>Moore v. Valder</u>, 65 F.3d 189, 192 (D.C. Cir. 1995) (citation omitted), <u>cert.</u> <u>denied</u>,519 U.S. 820 (1996).

includes actions where prosecutors are acting "in the course of [their] role as an advocate for the State," including "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial ...." Buckley, 509 U.S. at 273.  "Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." Id.  It may include obtaining evidence for the initiation of criminal process. Imbler, 424 U.S. at 431 n.33.  Moreover, "[a]bsolute immunity is not defeated by a showing that the prosecutor acted wrongfully or even maliciously, so long as the prosecutor is exercising quasi-judicial power and not merely operating in an investigatory or administrative role." Easton v. Gianetti, 1997 WL 220312 (N.D. Cal. 1997)(citing Imbler, 424 U.S. at 427 and n.27).  On the other hand, prosecutors are entitled only to qualified immunity when they perform investigatory or administrative functions, or are essentially functioning as police officers or detectives. Buckley, 509 U.S. at 273-274.[14]

---

[14]Qualified immunity is the default level of protection because absolute immunity is to be lightly applied:

> The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their

24

The distinction between the roles of "prosecutor" and "investigator" is not always clear.  <u>Imbler</u>, 424 U.S. at 431 n.33 ("Drawing a proper line between these functions may present difficult questions....").  At some point, a prosecutor stops functioning as an officer of the court and loses absolute immunity, but this determination must be made on a case-by-case or function-by-function basis.  Applying these principles, prosecutors have been granted absolute immunity for appearing before a judge and presenting evidence in support of a search warrant, <u>Burns</u>, 500 U.S. at 492, for their conduct before grand juries, <u>see</u> <u>Lucien v. Preiner</u>, 967 F.2d 1166, 1167 (7th Cir. 1992), <u>cert. denied</u>, 506 U.S. 893 (1992), for the knowing use of false testimony and the deliberate suppression of exculpatory evidence at trial, <u>Imbler</u>, 424 U.S. at 431 & n.34, for preparing and filing a motion for an arrest warrant, <u>Kalina v. Fletcher</u>, 522 U.S. 118, 129 (1997), and for failing to investigate adequately prior to filing charges, failing to turn over

---

duties.  We have been "quite sparing" in our recognition of absolute immunity, and have refused to extend it any "further than its justification would warrant."

<u>Burns v. Reed</u>, 500 U.S. 478, 486-87 (1991)(quoting <u>Forrester v. White</u>, 484 U.S. 219, 224 (1988); <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 811 (1982)).  "[I]f application of the principle is unclear, the defendant simply loses," and receives only the default of qualified immunity.  <u>Buckley,</u> 509 U.S. at 281.

exculpatory material to the defense, and gathering additional information during the pendency of criminal proceedings, <u>Broam v. Bogan</u>, 320 F.3d 1023, 1031-33 (9th Cir. 2003).  By contrast, prosecutors receive only qualified immunity for giving legal advice to the police, <u>Burns</u>, 500 U.S. at 496, for investigating physical evidence at a crime scene, <u>Buckley</u>, 509 U.S. at 274-75 (involving a bootprint left at the scene of a crime), for holding a press conference, <u>id.</u> at 276-78, for acting as a complaining witness in support of a warrant application, <u>Kalina</u>, 522 U.S. at 130-31, and for authorizing a warrantless wiretap in the interest of national security.  <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 520 (1985).

To determine whether an action is "prosecutorial" (and thus entitled to absolute immunity), the United States Supreme Court has adopted a "'functional approach,' which looks to 'the nature of the function performed, not the identity of the actor who performed it.'"  <u>Buckley</u>, 509 U.S. at 269 (quoting <u>Burns</u>, 500 U.S. at 486; <u>Forrester</u>, 484 U.S. at 229).  If the nature of the function requires legal knowledge and the related exercise of discretion in whether and how to use the material (<em>e.g.</em>, advocacy inside the courtroom or "quasi-judicial" activities related to the preparation for advocacy after criminal proceedings have begun), then absolute immunity is available.  <u>See Van de Kamp v.</u>

<u>Goldstein</u>, 129 S.Ct. 855, 861-862 (2009).  While the "duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom," <u>Imbler</u>, 424 U.S. at 431 n.33, absolute prosecutorial immunity will be given "only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct." <u>Burns</u>, 500 U.S. at 494.

The cases distinguishing investigative and prosecutorial functions look particularly at the goal(s) of the action.  For example, a prosecutor cannot act as an advocate for the government prior to the existence of probable cause for arrest. In <u>Buckley</u>, the Supreme Court held that the prosecutors lacked absolute immunity for their actions before they had probable cause to arrest a suspect because "[t]heir mission at that time was entirely investigative in character." <u>Buckley</u>, 509 U.S. at 274.  Even after a grand jury had been empaneled, the prosecutor's actions before it were not shielded by absolute immunity because "its immediate purpose was to conduct a more thorough investigation of the crime - not to return an indictment against a suspect whom there was already probable cause to arrest." <u>Id.</u> at 275.  Simply stated, the question becomes whether the defendant prosecutor is acting more like a police

detective or a zealous legal advocate.   "There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial ... and the detective's role in searching for clues and corroboration that might give him probable cause to recommend that a suspect be arrested."  Id. at 273.  See also Barbera v. Smith, 836 F.2d 96, 100-01 (2d Cir. 1987)(distinguishing the supervision of law enforcement agencies in acquiring evidence from the organization and evaluation of evidence).

Once there is probable cause for arrest, a prosecutor's actions are best viewed as advocating for indictment or conviction.  Buckley, 509 U.S. at 274 ("A prosecutor neither is, nor should he consider himself to be, an advocate before he has probable cause to have anyone arrested.").  See also Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 678 (9th Cir. 1984)(defendant arrested but not indicted; prosecutor absolutely immune from suit for destruction of exculpatory evidence).  The First Circuit has followed the Supreme Court's focus on probable cause as a method for differentiating between prosecutorial and investigative functions.  See Noqueras-Cartagena v. U.S. Dept. of Justice, 75 Fed. Appx. 795, 798 (1st Cir. 2003) ("The subjective intent of the prosecutors is irrelevant, especially in view of the fact that, here, the indictment provides irrefutable evidence

of the existence of probable cause.").

     2.   <u>Whether Vuono Is Entitled to Absolute Immunity</u>

     In order to evaluate whether Vuono's actions fall within the immunity doctrine, it is necessary to review the relevant background of the underlying criminal case against Crooker (<u>United States v. Crooker</u>, CR 04-30034-MAP).  This case involved the following facts, as found by Judge Ponsor in his Memorandum and Order (Docket No. 151).

     In April 2004, Crooker was in the business of selling chemicals through the Internet.  A potential customer from Wisconsin sent an e-mail to him asking for a complete list of chemicals and other information, such as packaging and cost information.  Crooker's e-mail response referencing a recent shipment of nitric acid by Parcel Post alarmed the customer, who reported it to the Milwaukee field office of the Postal Inspection Service.  That office then passed the message along to Postal Inspector Brian Dailey, in Springfield, Massachusetts. Inspector Dailey reviewed the message in June 2004, and was concerned because he knew Crooker to be well known in law enforcement circles.  He knew that Crooker had been involved in mailing firearms, and that there was evidence that Crooker might possess ricin, a highly toxic substance that was considered non-mailable and hazardous.  Thereafter, Inspector Dailey asked the Feeding Hills Postmaster, Maureen Price, to hold any package that

Crooker brought in for mailing and asked that she notify him about it.

On June 7, 2004, Crooker arrived at the Feeding Hills Post Office with a package that was different than others he had mailed.  The package was addressed to Mike Paulus in Celina, Ohio.  When asked whether the package contained hazardous materials, Crooker stated that it did not, and stated that it contained metal parts.  Crooker was offered several mailing options (First Class, Priority, and Express Mail) under which the packages are sealed under postal regulations and cannot be inspected without a warrant.  Crooker elected to use Parcel Post instead, and then left.  Parcel Post delivery permits discretionary opening and inspection by postal employees. Postmaster Price put the package aside and notified Inspector Dailey, who retrieved the package and brought it back to his office.  The next day, Dailey had conversations with the United States Attorney's Office and the Postal Service legal department. He attempted to locate a trained canine, but was unable to do so. On June 10, 2004, Inspector Dailey x-rayed the package and believed it to contain some type of firearm.  He confirmed that neither Crooker nor the listed recipient was authorized to mail or receive firearms.  Inspector Dailey also determined that as a convicted felon, Crooker was not authorized to possess or transport firearms.

On June 12, 2004, Inspector Dailey drafted an affidavit in support of a search warrant.  On June 14, 2004, a search warrant was approved by the court and the package was opened.  Inspection revealed that the package contained parts of a large caliber air rifle, as well as a silencer capable of muffling the sound of an air rifle as well as a .22 caliber firearm.  See Memorandum and Order (¶ II.  Procedural and Factual Background)(Docket No. 151 at 1-6).

Based on this seizure, on June 23, 2004, a Criminal Complaint was filed against Crooker charging him with violations of 18 U.S.C. §§ 921 and 922(c) and an arrest warrant issued. Crooker was arrested on June 23, 2004 and received an Initial Appearance before Magistrate Judge Kenneth P. Neiman.  See United States v. Crooker, 3:04-mj-00657-KPN.  On June 29, 2004, Magistrate Judge Neiman held a detention hearing and a preliminary examination.  The evidence was not completed on that date, and the preliminary examination was continued to July 15, 2004.  Thereafter, the hearing was canceled because Crooker was indicted on July 14, 2004.[15]  See Indictment (Docket No. 7) in CR 04-30034-MAP.

During the course of the criminal proceedings, Crooker

-----

[15]Crooker alleges that the 33 letters at issue (except for the letter that is the subject of count 6, as to which the date is unknown) are all dated post-indictment (i.e., between July 16, 2004 through May 23, 2005).

filed, *inter alia*, a Motion to Suppress the letters obtained by
Vuono from Wyatt staff and others.  Motion to Suppress (Docket
No. 137).  The United States challenged Crooker's assertion that
the government caused employees at Wyatt to unlawfully conduct
warrantless searches and seizures of his mail, arguing that
Wyatt's internal regulations, R.I. Gen. Laws § 42-56-10 (22), and
28 C.F.R. § 540.14(b) permitted the reading of Crooker's outgoing
mail.  It further contended that the government obtained copies
of that mail properly, through lawful grand jury subpoenas.
Finally, the government argued that Crooker failed to demonstrate
that as a federal pretrial detainee, he had an expectation of
privacy in his outgoing mail.  See Memorandum in Opposition
(Docket No. 144 at 8-9).

After a number of evidentiary hearings on Crooker's pretrial
motions, Judge Ponsor denied Crooker's Motion to Suppress with
respect to his mail.  First, Judge Ponsor found that a
substantial amount of mail sent by Crooker that was obtained by
the government was done so with the permission of the recipients.
Second, with respect to the mail opened by Wyatt employees,
federal regulations applied to the Wyatt Detention Center, and
the regulations permitted non-privileged mail from a pretrial
inmate to be read and inspected by staff.  Finally, since Crooker
did not claim that the mail seized was privileged, he failed to
provide a basis for suppression.  See Memorandum and Order

(Docket No. 151 at 13-15).

Thereafter, Crooker appealed his conviction based, in part, on Judge Ponsor's denial of his suppression motion.  On appeal, Crooker argued that Wyatt's opening of his sealed outgoing mail violated the Fourth Amendment, particularly where Wyatt staff could not have responded to Vuono's subpoenas with copies of the letters unless they had previously opened the sealed mail and copied them.

The government conceded that Judge Ponsor's reliance on federal and state regulations appeared to be misplaced, and that First Circuit law held that pretrial detainees retain basic Fourth Amendment rights; nevertheless, the government argued that Wyatt's actions in monitoring Crooker's mail was justified to prevent criminal activity.  Additionally, the government argued that a letter (to Crooker's brother) was used as evidence of Crooker's past experience with silencer parts.  On appeal, the probative value of this letter was disputed.  The government argued that the letter was not very probative and therefore any error by the District Court in its admission was harmless; Crooker argued that the government had no other documentary evidence to support its argument that Crooker had a history with silencers (as opposed to firearms).  This knowledge issue was a matter put to the jury (*i.e.*, whether Crooker knew that the cylindrical object found with the airgun was, in and of itself,

capable of silencing or muffling a firearm).

The First Circuit's ruling, reversing the District Court and remanding for entry of a Judgment of Acquittal, was based on the holding that the silencer did not qualify as a "firearm" within the meaning of 18 U.S.C. §§ 921(a)(3)(c) and 924; it did not address the Fourth Amendment issues with respect to Crooker's prison mail.

Turning to the instant action, to reiterate, in his Amended Complaint (Docket No. 13), Crooker alleges that Vuono, in her capacity as an Assistant United States Attorney, misused her authority by soliciting the Wyatt staff to open and photocopy letters written by him which had been sealed and placed into locked mail depositories, and issuing grand jury subpoenas for them. Id. at ¶¶ 2, 17. Crooker alleges that Vuono was using these letters for the purpose of furthering her prosecution of him, rather than for the legitimate purposes of safety and suspicion of criminal activity.[16] Id. at ¶¶ 16-18.

Crooker claims that between the dates of July 16, 2004 and May 23, 2005 at least 33 of his incoming and outgoing letters and

---

[16]When Vuono's actions came to light during a suppression hearing on May 9, 2006, Crooker states that another prosecutor associated with the case explained to the judge "that it was [the prosecutor's] office who solicited the letters and it was not a matter of Wyatt's investigatory staff promoting the inspection and disclosure for institutional purposes." Am. Compl. (Docket No. 13 at § 18).

34

enclosures were photocopied and disclosed to Vuono.[17]
Additionally, he asserts that at least 115 of his letters were
intercepted in total.  Only one of the 33 letters was used
against Crooker at his criminal trial (a letter to his brother,
described above).  Id. at ¶ 20.

On this record, this Court will dismiss Crooker's claims
against Vuono on the ground of absolute prosecutorial immunity.[18]
Crooker asserts that Vuono obtained the letters "in an attempt to
gather intelligence and background material for Crooker's
criminal case and not for institutional security reasons."[19]  It
is undisputed that this entire case arose from actions undertaken

---

[17]Each of these letters is identified in Crooker's Amended
Complaint as separate Counts 1-33.  Am. Compl. (Docket No. 13 at
7-8).

[18]This Court has considered court orders and pleadings by the
parties; however, the matter need not be resolved by way of
summary judgment.  Ordinarily, a court's consideration of
documents outside the pleadings converts a Rule 12(b)(6) motion
to a motion for summary judgment.  See Fed. R. Civ. P. 12(d).
That is not the case, however, if the documents are "central to"
the plaintiff's claim.  Watterson v. Page, 987 F.2d 1, 3 (1st
Cir. 1993)("Ordinarily, of course, any consideration of documents
not attached to the complaint, or not expressly incorporated
therein, is forbidden, unless the proceeding is properly
converted into one for summary judgment under Rule 56.  See Fed.
R. Civ. P. 12(b)(6).  However, courts have made narrow exceptions
for documents the authenticity of which are not disputed by the
parties; for official public records; for documents central to
plaintiffs' claim; or for documents sufficiently referred to in
the complaint.").

[19]Plaintiff's Memorandum of Law in Support of Partial Summary
Judgment (Docket No. 15 at 4).

"for the purpose of [Vuono's] prosecution of him."  Report and
Recommendation (Docket No. 25 at 4-5).[20]  Vuono's actions were
within the scope of her duties in initiating and pursuing her
criminal prosecution.  "Prosecutors are absolutely immune from
liability for gathering additional evidence after probable cause
is established or criminal proceedings have begun when they are
performing a quasi-judicial function."  Broam, 320 F.3d at 1030
(citing Imbler, 424 U.S. at 431 n.33).  Here, criminal
proceedings had begun, and Vuono obtained copies of the letters
through a legal process.  Even if Vuono acted wrongfully, that is
not sufficient to defeat application of the doctrine because
Vuono was not acting in an investigatory or administrative role,
nor was she functioning in a capacity akin to a police officer.[21]

_____

[20]As early as June of 2006, Crooker alleged in his First Motion to
Suppress that the government intended to introduce his seized
mail as evidence at his trial.  See United States v. Crooker, CR
04-30034-PBS (Defendant's Motion to Suppress Sealed Mail, Docket
No. 137, at 2).

[21]As noted previously, Crooker alleged that Vuono was negligent
"in failing to be aware of legal precedent that supposedly
establishes her actions were illegal."  Plaintiff's Memorandum of
Law in Support of Motion for Partial Summary Judgment (Docket No.
15 at 5).  Even if this proposition were true (*i.e.*, that the
prosecutor negligently erred in her understanding of the law by
which she could maintain her prosecution), this is precisely the
type of allegation that would fall squarely within the immunity
doctrine.  In light of Judge Ponsor's findings after suppression
hearings and briefing -- that Wyatt staff had the legal authority
to intercept Crooker's prison mail (a position from which the
government apparently later retreated on appeal)-- Vuono has
qualified immunity as well even if absolute immunity did not
apply.

See Buckley, 509 U.S. at 273-74; Easton, 1997 WL 220312. Moreover, one of Crooker's letters was used during his criminal trial, and that letter, by Crooker's own assertions, was a key piece of evidence for the prosecution.  The use of this letter bolsters the conclusion that Vuono was acting in an evidence-gathering mission wholly for trial purposes -- actions that fall within the immunity doctrine.  The fact that Crooker's conviction was later reversed based on a question of statutory interpretation has no bearing on the issues here.  In short, where Vuono's actions were undertaken in connection with grand jury proceedings and where the letters were obtained pursuant to a lawful grand jury, Vuono is entitled to absolute prosecutorial immunity.

In light of all of the above, this Court holds that the doctrine of absolute prosecutorial immunity bars all of Crooker's Bivens claims against Vuono, and therefore all claims shall be dismissed.[22]

**F.   The Motion for Leave to File Second Amended Complaint**

In light of the above, the Court finds that it would be

---

[22]In view of this ruling, this Court does not need to address Crooker's constitutional claims on the merits with respect to the propriety of opening and copying of each one of the 33 letters forming the basis of Counts 1-33, nor does this Court need to delve into the claim preclusion argument asserted by the government, or the question whether there were legitimate security interests presented justifying Crooker's mail interception.

futile to permit Crooker an opportunity to file a Second Amended
Complaint.  Additionally, given the procedural posture of the
case, the request for leave is untimely, and would be unduly
prejudicial to the defendants.

Accordingly, Crooker's Motion for Leave to File the Second
Amended Complaint (Docket No. 50) is <u>DENIED</u>.

**G.    The Motion for Leave to File Reply**

The Court ALLOWS Crooker's Motion for Leave to File a Reply
(Docket No. 52) to the opposition to his Motion to File a Second
Amended Complaint, and considers the arguments contained therein.
Nevertheless, for the reasons set forth above, his reply
memorandum does not alter this Court's conclusion that Crooker
may not file a Second Amended Complaint.

### III.  CONCLUSION

Based on the foregoing, it is hereby ordered that:

1.  Plaintiff's state law claim under the Massachusetts Civil
    Rights Act, contained in the original complaint filed in
    state court, is deemed <u>WITHDRAWN</u> by virtue of the
    superseding Amended Complaint;

2.  The Motion to Dismiss or for Summary Judgment by the United
    States (Docket No. 44) is <u>GRANTED</u> to the United States as to
    all claims brought under the Federal Tort Claims Act;

3.  The Motion to Dismiss or for Summary Judgment brought on
    behalf of Ariane D. Vuono by the United States (Docket No.
    44) is <u>GRANTED</u> as to all <u>Bivens</u> claims;

4.  Plaintiff's Motion for Leave to File Second Amended
    Complaint (Docket No. 50) is <u>DENIED</u> with prejudice;

5.  Plaintiff's Motion for Leave to File A Reply (Docket No. 52)

is <u>ALLOWED</u>; and

6.   A separate judgment shall enter for the defendants United
     States and Ariane D. Vuono on all claims asserted by
     plaintiff Michael Alan Crooker.[23]


SO ORDERED.

                              <u>/s/ Patti B. Saris</u>
                              UNITED STATES DISTRICT JUDGE

---

[23] Should Crooker seek to appeal the rulings contained herein, he
is advised that this Court will not grant leave to proceed on
appeal *in forma pauperis* because he is a three-strikes litigant
under 28 U.S.C. § 1915(g).  Should such a motion be filed, it
will be denied, and Crooker may seek review in accordance with
Fed. R. App. P. 24 (appealing *in forma pauperis*).